2006 WY 47

**David E. FOLLETT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

Nos. 04–133, 05–63.

Supreme Court of Wyoming.

April 19, 2006.

Rehearing Denied May 3, 2006.

Representing Appellant: Mike Cornia, Evanston, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Robin Sessions Cooley, Deputy Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] After undergoing a mental evaluation which indicated he was competent to stand trial, David Follett pled guilty to one count of third degree sexual assault in violation of Wyo. Stat. Ann. §§ 6–2–304(a)(i) and 6–2–306(a)(iii) (LexisNexis 2005). The district court sentenced him to a term of ten to twelve years in the state penitentiary, and Mr. Follett appealed. Mr. Follett also filed a motion to withdraw his guilty plea, claiming the district court should have ordered a second mental evaluation before accepting the plea. The district court denied Mr. Follett's motion to withdraw his guilty plea, and he appealed that determination, as well. Mr. Follett's two appeals were consolidated for decision. We affirm.

## ISSUES

[¶ 2] Mr. Follett presents the following issues on appeal:

I. Was the appellant's right to due process violated when the court accepted his guilty plea?

II. Whether the denial of the motion to withdraw guilty plea was an abuse of discretion?

The State presents a single appellate issue:

Whether the court properly accepted appellant's guilty plea and whether it abused its discretion in denying appellant's subsequent motion to withdraw the plea after sentencing?

## FACTS

[¶ 3] Mr. Follett lived next door to the thirteen-year-old female victim and her family. He and his wife were well-acquainted with the victim's family, and the victim and her younger sister often visited the Follett home. Approximately two years before the charged offense, Mr. Follett told the victim's father angels had directed him to teach the victim about sex. He claimed he would have to answer to Gideon's sword if he did not obey the angel. The men agreed Mr. Follett should not be alone with the victim. Nevertheless, in July of 2003, Mr. Follett, who was sixty-five years old, had sexual intercourse with the young girl in his motor home which was parked outside his residence. Shortly thereafter, Mr. Follett confessed to the victim's father that he had "broken his trust."

[¶ 4] The State charged Mr. Follett with one count of third degree sexual assault in violation of Wyo. Stat. Ann. §§ 6–2–304(a)(i) and 6–2–306(a)(iii). Through his attorney, Mr. Follett filed a motion for a mental evaluation and stay of the proceedings pursuant to Wyo. Stat. Ann. §§ 7–11–301(a) and 7–11–304(d) (LexisNexis 2005). The circuit court entered an order granting the defense motion, and a mental health professional evaluated Mr. Follett on September 25, 2003. The evaluator filed a report on October 13, 2003, indicating she had no concerns about Mr. Follett's competence to stand trial. The report also concluded Mr. Follett did not meet the threshold criteria for a defense of not guilty on the basis of mental defect because he admitted he knew what he was doing was wrong when he committed the offense.

[¶ 5] Mr. Follett waived his preliminary hearing and the case was bound over to the district court on October 24, 2003. The district court arraigned him on November 13, 2003, at which time Mr. Follett pleaded not guilty, not guilty by reason of mental illness and not triable because of mental defect. Trial was set for February 17, 2004. An order setting a change of plea hearing was subsequently entered, and the hearing was held on February 6, 2004. Mr. Follett pled guilty to the charge without the benefit of a plea agreement. He provided a factual basis for the guilty plea, and the district court accepted his plea. The district court subsequently sentenced Mr. Follett to serve not less than ten nor more than twelve years in the Wyoming State Penitentiary. He filed a

notice of appeal of the judgment and sentence on April 26, 2004.

[¶ 6]   Mr. Follett retained new defense counsel who filed a motion to withdraw his guilty plea.   The defense argued, since Mr. Follett entered pleas of not guilty and not triable because of mental illness or defect after the competency evaluation was completed, the district court should have *sua sponte* ordered a second evaluation before it accepted his guilty plea.[1]   The district court denied Mr. Follett's motion to withdraw his guilty plea, and he appealed to this Court.   Mr. Follett's two cases were consolidated for decision on appeal.

## DISCUSSION

### *Competency Procedures*

■   [¶ 7]   Mr. Follett argues his right to due process was violated because the district court did not follow the statutorily mandated procedures for determining whether he was competent to proceed with the trial court proceedings.   In particular, he claims the district court should not have accepted his guilty plea without ordering a competency hearing.

■   [¶ 8]   "A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so "competently and intelligently."   *Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), quoting *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).   The same standard of competency applies whether a defendant goes to trial or pleads guilty.   *Godinez,* 509 U.S. at 398, 113 S.Ct. 2680.   The United States Supreme Court has ruled that a defendant is competent, under the standards of due process, if he has " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding' and has 'a rational as well as factual understanding of the proceedings against him.' "   *Godinez,* 509 U.S. at 396, 113 S.Ct. 2680, quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam).   The determination of whether a defendant is mentally fit to proceed must be made by the trial court.   *Hayes v. State,* 599 P.2d 558, 563 (Wyo.1979).   "It is not in the nature of a defense to the charge.   It is a threshold issue, necessary to be resolved to prevent a violation of due process through conviction of a person incompetent to stand trial."   *Id.*   Moreover, the competency requirement continues from the time of arraignment through sentencing.   *See Godinez,* 509 U.S. at 403, 113 S.Ct. 2680 (Kennedy, J., concurring);   *deShazer v. State,* 2003 WY 98, ¶ 20, 74 P.3d 1240, 1248 (Wyo. 2003).

■   [¶ 9]   Wyo. Stat. Ann. § 7–11–301 *et. seq.* sets forth the requirements for determining whether a criminal defendant is competent to stand trial.   The statutes are designed to protect criminal defendants' due process rights.   *deShazer,* 2003 WY 98, ¶ 26, 74 P.3d at 1251.   Under the principles articulated in *Godinez* and the clear language of the statutes, the statutory requirements pertain to all trial court proceedings, including change of plea proceedings.   Wyo. Stat. Ann. § 7–11–303 (LexisNexis 2005) provides, in pertinent part:

> (a) If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion, that there is reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed, all further proceedings shall be suspended.
>
> (b) The court shall order an examination of the accused by a designated examiner. The order may include, but is not limited to, an examination of the accused at the

---

1. There was some confusion in the record because the mental evaluation report was not initially included as part of the official district court record and the other circuit court documents pertaining to the evaluation proceedings were not delivered to the district court when Mr. Follett was bound over for trial.   The record was supplemented on appeal pursuant to W.R.A.P. 3.04.   Mr. Follett contested the supplementation

of the record in his reply brief; however, it is clear from the record the district court relied upon the mental evaluation and found the documents pertaining to it should be included in the record to make it "conform to the truth."   We conclude, therefore, the district court properly supplemented the record in accordance with W.R.A.P. 3.04.   *See, Harlow v. State,* 2003 WY 47, ¶ 87, 70 P.3d 179, 206 (Wyo.2003).

Wyoming state hospital on an inpatient or outpatient basis, at a local mental health center on an inpatient or outpatient basis, or at his place of detention.

* * *

(d) The clerk of court shall deliver copies of the report to the district attorney and to the accused or his counsel. The report is not a public record or open to the public. After receiving a copy of the report, both the accused and the state may, upon written request and for good cause shown, obtain an order granting them an examination of the accused by a designated examiner of their own choosing.

Wyo. Stat. Ann. § 7–11–304 (LexisNexis 2005) provides specific protections when a defendant pleads not guilty or not triable on the basis of mental illness or defect. That statute provides, in relevant part:

* * *

(d) In all cases where a plea of "not guilty by reason of mental illness or deficiency" is made, the judge shall order the defendant examined as provided in W.S. 7–11–303(b). If an examination provided in W.S. 7–11–303(b) was made, the report may be received in evidence and no new examination shall be required unless, in the discretion of the court, another examination is necessary. Within five (5) days after receiving a copy of the report, both the accused and the state, upon written request, may obtain an order granting them an examination of the accused by a designated examiner of their own choosing. The clerk of court shall deliver copies of the report or reports to the district attorney and to the accused or his counsel. All reports required by this subsection shall conform to the requirements of W.S. 7–11–303(c). These reports are not public records or open to the public.

[¶ 10] In *deShazer*, 2003 WY 98, ¶ 12, 74 P.3d at 1244–45, we adopted the standards articulated by the United States Court of Appeals for the Tenth Circuit to review competency issues.

Although competence is a factual issue, that term ... is not self-defining. Because competency to stand trial is an aspect of substantive due process, ... the

legal standard by which competency is to be evaluated is constitutionally mandated. Accordingly, the components of that standard, required as they are by the Constitution, do not vary according to the views of a particular court. The Constitution can require but one gauge against which to determine whether, because of his mental condition, a defendant's due process rights are violated by requiring him to stand trial. The content of the standard of competency is therefore a question of law which we review de novo.

*Id.* (citations omitted). We look to the following standard in evaluating the sufficiency of the processes used by the trial court in determining whether a defendant is competent to continue with legal proceedings:

Once the trial court has "evaluated a defendant's competency by the correct standard, the second inquiry on review is whether the trial court's determination of a defendant's competency is fairly supported by the record of the proceeding at which the determination [is] made.... In other words, the substantial evidence standard of review governs the second inquiry." [*State v.*] *Soares*, 81 Hawai'i 332, 916 P.2d [1233], 1251 [ (Haw.Ct.App.1996) ].

*deShazer*, 2003 WY 98, ¶ 13, 74 P.3d at 1244–45.

[¶ 11] Prior to being bound over to the district court for a trial, Mr. Follett filed a motion to suspend the proceedings and for a mental evaluation. The circuit court granted the defense motion, and the resulting evaluation concluded:

It can be stated with a reasonable degree of psychological certainty that Mr. Follett has the basic capacity to comprehend his position, understand the nature and object of the proceedings against him, conduct his defense in a rational manner, and the ability to cooperate with his counsel to the end that a defense may be interposed on his behalf.

Neither Mr. Follett nor the State objected to the report or requested a second evaluation in accordance with Wyo. Stat. Ann. § 7–11–303(d) or § 7–11–304(d). Mr. Follett subsequently waived his preliminary hearing and

the circuit court bound him over to the district court for trial. The district court arraigned Mr. Follett on November 13, 2003, and he entered pleas of not guilty, not guilty by reason of mental illness and not triable by reason of mental deficiency.

[¶ 12] On appeal, Mr. Follett argues the district court should have *sua sponte* ordered a second evaluation after he pleaded not guilty by reason of mental illness. He claims a second evaluation following his plea was mandated by the language in Wyo. Stat. Ann. § 7–11–304(d) which states: "[i]n all cases where a plea of not guilty by reason of mental illness or deficiency is made, the judge shall order the defendant examined as provided in W.S. 7–11–303(b)." He also complains the district court violated the statutory requirements by failing to make an express finding on the record that he was competent.

[¶ 13] Mr. Follett did not object to the results of the first evaluation or request another evaluation as he was entitled to by the statutes. Thus, the results of the first evaluation did not trigger additional obligations. Wyo. Stat. Ann. § 7–11–304(d) sets out the requirement for an examination when a defendant enters a mental illness plea; however, it also specifically states that if an evaluation has already been performed, then "the report may be received in evidence and no new examination shall be required unless, in the discretion of the court, another examination is necessary." The clear language of Wyo. Stat. Ann. § 7–11–304(d) allowed the court to rely on the initial examination, so long as it did not deem another examination was necessary. Moreover, although it is good practice for the district court to make an express finding of competency after a mental health evaluation, the district court's failure to do so in this case was not erroneous. In *Hayes*, we held the district court did not err by failing to enter a specific order regarding the defendant's competency to stand trial. *Hayes*, 599 P.2d at 568. As in this case, there was no conflicting evidence about the defendant's competency resulting from the mental health evaluation and there was but one ruling which the record would support. *Id.*

[¶ 14] Other cases have followed procedural paths similar to Mr. Follett's case. In *Smith v. State*, 871 P.2d 186 (Wyo.1994), Mr. Smith was charged with two counts of first degree murder. Prior to his arraignment, the trial court ordered the procedures suspended for an evaluation of Mr. Smith's competency to stand trial. *Id.* at 187. After the trial court determined he was fit to proceed, Mr. Smith was arraigned and pled not guilty and not guilty by reason of mental illness or deficiency. *Id.* Mr. Smith subsequently changed his plea to guilty. *Id.* On appeal, this Court concluded his guilty plea was unconditional and, consequently, he waived all non-jurisdictional defenses. *Id.* at 190. There was no contention that the trial court was required to order Mr. Smith to undergo another competency evaluation simply because he pled not guilty by reason of mental illness after the competency evaluation was completed. *Id.*

[¶ 15] Mr. Follett maintains the competency requirement is continuing and the evaluation in circuit court was insufficient to comply with the statutory requirements. We agree the district court has a continuing duty to monitor whether a defendant's competency should be evaluated. This continuing duty is recognized by both our statutes and our case law. *See* Wyo. Stat. Ann. §§ 7–11–303 and 7–11–304; *deShazer*, 2003 WY 98, ¶ 26, 74 P.3d at 1251. However, unless the parties avail themselves of the procedures for contesting an evaluation pursuant to Wyo. Stat. Ann. § 7–11–303(d), there must be some basis for the district court to conclude additional evaluations are warranted. In other words, there must be "reasonable cause to believe the accused has a mental illness or deficiency making him unfit to proceed" before other evaluations are mandated. Wyo. Stat. Ann. § 7–11–303(a).

[¶ 16] Mr. Follett points to statements made in association with his sentencing as evidence his competence was questionable. His wife and son both testified he had not been the same since he suffered a heart attack and underwent heart bypass surgery several years before, and they testified Mr. Follett needed mental help. This evidence did not, however, trigger the need for a

second evaluation because those same circumstances existed when the initial evaluation was conducted. Furthermore, the district court acknowledged it was cognizant of Mr. Follett's potential mental health issues and paid particular attention to those matters during all court proceedings. Mr. Follett points to nothing in the record to indicate his mental health situation changed between the time of the evaluation and the change of plea hearing.

[¶ 17] Because Mr. Follett did undergo a mental evaluation and there was no indication his mental health changed after the evaluation, this case is substantively different from *deShazer*. "The status of deShazer's mental health was in question from the very outset of this case," and, yet, no evaluation was ordered prior to his trial. *deShazer*, 2003 WY 98, ¶ 14, 74 P.3d at 1245. The evidence of his diminished capacity included "tape-recorded 'rantings' and typewritten and handwritten letters and notes, most of which might have raised the specter of mental illness or incompetency even in the mind of a lay observer." *deShazer*, 2003 WY 98, ¶ 15, 74 P.3d at 1245. In addition, the prosecution called the district court's attention to the fact "deShazer's father had attempted to have his son involuntarily committed to a mental hospital shortly before the crimes were committed because he believed his son to be obsessed with the victim, severely depressed, and suicidal." *deShazer*, 2003 WY 98, ¶ 16, 74 P.3d at 1249. Similarly, defense counsel indicated, on several occasions, he was concerned about deShazer's state of mind. *deShazer*, 2003 WY 98, ¶¶ 16–18, 74 P.3d at 1249. The district court did not, however, order deShazer to undergo a mental evaluation. On appeal, we concluded the district court erred by failing to *sua sponte* order the proceedings suspended and a mental health evaluation to determine whether deShazer was competent to proceed. *deShazer*, 2003 WY 98, ¶ 28, 74 P.3d at 1252. "We [held] that the circumstances presented at trial were sufficient to trigger the requirement that the district court conduct a competency hearing in order to determine if deShazer was fit to proceed." *Id.*

[¶ 18] In contrast, Mr. Follett's rights were protected in this case. He underwent a mental evaluation which concluded he was competent, and he did not contest the results of the evaluation or request an additional evaluation. After the evaluation was completed, there was no new evidence suggesting Mr. Follett's capacity had diminished. We conclude the district court complied with the mental examination requirements set out in the statutes and Mr. Follett's due process rights were not violated.

### Motion to Withdraw Guilty Plea

[¶ 19] Mr. Follett maintains the district court abused its discretion by denying his motion to withdraw his guilty plea. W.R.Cr.P. 32(d) sets out the standards for withdrawal of a guilty plea.

> If a motion for withdrawal of a plea of guilty is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. The standard for withdrawing a plea of guilty after sentencing requires the defendant to show "manifest injustice."

*Ingersoll v. State*, 2004 WY 102, ¶ 12, 96 P.3d 1046, 1051 (Wyo.2004). *See also, Major v. State*, 2004 WY 4, ¶ 12, 83 P.3d 468, 473 (Wyo.2004).

> "Manifest injustice" contemplates a "situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party." It is, in part, intended to address "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." The party seeking to withdraw his plea bears the burden of demonstrating manifest injustice. Justification for this heightened standard for withdrawal of a plea after sentencing is based in the
>
> > "practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be

retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process."

A district court has discretion in determining whether a party has proved manifest injustice. Absent an abuse of that discretion, we will not disturb the district court's determination. A district court's decision to deny a motion to withdraw a plea "will not be reversed for an abuse of discretion so long as the district court reasonably could conclude as it did."

*Ingersoll,* 2004 WY 102, ¶ 19, 96 P.3d at 1051–52 (citations omitted).

[¶ 20] Mr. Follett claims he showed "manifest injustice," entitling him to withdraw his guilty plea because his plea was not knowing and voluntary. As the United States Supreme Court acknowledged in *Godinez,* the knowing and voluntary requirement for a guilty plea is distinct from a finding the defendant is competent. *Godinez,* 509 U.S. at 400–01, 113 S.Ct. 2680.

The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. See *Drope v. Missouri,* [420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ] (defendant is incompetent if he "lacks the *capacity* to understand the nature and object of the proceedings against him") (emphasis added). The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced. See *Faretta v. California,* [422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1974) ] (defendant waiving counsel must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open' ") (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279,

63 S.Ct. 236, 87 L.Ed. 268 (1942)); *Boykin v. Alabama,* 395 U.S. [238] at 244 [89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ] (defendant pleading guilty must have "a full understanding of what the plea connotes and of its consequence").

*Id.* at 401, n. 12, 113 S.Ct. 2680.

[¶ 21] W.R.Cr.P. 11 sets forth the requirements which must be met to ensure a defendant's guilty plea is voluntary and knowing. *Major,* 2004 WY 4, ¶ 11, 83 P.3d at 472. When accepting a guilty plea, the district court must carefully follow the dictates of Rule 11. *See, Ingalls v. State,* 2002 WY 75, ¶ 10, 46 P.3d 856, 859 (Wyo. 2002). W.R.Cr.P. 11 states, in relevant part:

\* \* \*

(b) *Advice to Defendant.*—Except for forfeitures on citations (Rule 3.1) and pleas entered under Rule 43(c)(2), before accepting a plea of guilty or nolo contendere to a felony or to a misdemeanor when the defendant is not represented by counsel, the court must address the defendant personally in open court and, unless the defendant has been previously advised by the court on the record and in the presence of counsel, inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law and other sanctions which could attend a conviction. . . .

\* \* \*

(2) The defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant;

(3) The defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to court process to obtain the testimony of other witnesses, and the right against compelled self-incrimination;

(4) If a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel, about the offense to which the defendant has pleaded guilty, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

[¶ 22]   Mr. Follett claims the district court did not ensure his guilty plea was made knowingly and voluntarily.   In particular, he challenges the district court's failure to advise him at his change of plea hearing about: the maximum penalty associated with the charge, his right to counsel at the plea hearing, the elements of the crime, his right to plead not guilty and his right to persist with that plea to trial.

[¶ 23]   Rule 11 requires that the defendant be informed of his rights at the time he enters a plea of guilty, **unless he has already been so advised on the record.** W.R.Cr.P. 11(b) (emphasis added).   As we recognized in *McCarty v. State*, 883 P.2d 367, 373 (Wyo.1994), "[t]he language of W.R.Cr.P. 11(b) no longer requires the district court to perfunctorily repeat information on rights and consequences which has previously been conveyed during arraignment or during other on the record proceedings in the presence of counsel." The following colloquy occurred at the change of plea hearing:

THE COURT:  I note the presence of the Defendant in the courtroom today. Mr. LaBuda is here representing him.

And you're privately retained, as I recall, in this case.

MR. LABUDA: Yes.

* * *

THE COURT:  You appeared in this court on the 13th day of November of 2003.   On that date I informed you that you faced a felony charge of Sexual Assault in the Third Degree, and that for that charge if you either entered a plea of guilty or were convicted of it after a trial, you were facing maximum possible penal-

ties of 15 years in the Wyoming State Penitentiary, a $10,000 fine or both the imprisonment and the fine combined.

Did you understand me then and do you understand me now regarding the nature of the charge you face and the maximum possible penalties?

THE DEFENDANT: Yes, ma'am.

* * *

THE COURT:  When you were here in court in November, I advised you of your constitutional rights.   Do you have any questions about them today?

THE DEFENDANT:  No, ma'am.

THE COURT:  Before I ask whether you're ready to plea, I have to warn you that if you plead guilty, you would be admitting all of the essential facts of the charge.

In that event, you would be giving up the right to the presumption of innocence, the right to remain silent, the right to a trial, the right to be confronted by witnesses and to cross-examine those witnesses, and the State wouldn't have to prove any charge against you.   The only issue that would remain would be the sentence to be imposed.

Also, if you plead guilty to a felony you lose certain civil rights.   If you are on probation or parole for any other crime, that could [be] revoked and you could be compelled to serve any sentence imposed for that crime, in addition to any sentence that might be imposed on this charge.

If you plead guilty you also give up the right to object to evidence allegedly obtained in violation of your constitutional rights.

Do you understand the consequences of a guilty plea?

THE DEFENDANT: Yes, ma'am.

THE COURT:  Are you ready to plead today?

THE DEFENDANT: Yes, ma'am.

THE COURT:  Will your plea be entered voluntarily?

THE DEFENDANT: Yes.

THE COURT: Has anyone forced, threatened, or promised you anything outside of a plea agreement?

THE DEFENDANT: No, ma'am.

* * *

THE COURT: Have you talked with Mr. LaBuda about the plea that you intend to enter?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with his representation of you so far?

THE DEFENDANT: Yes, ma'am.

THE COURT: If you plead guilty, Mr. Follett, you need to understand that the Court would ask you questions about the crime, which you would have to answer under oath, on the record and in the presence of your attorney, and that those answers could be used against you in this case or in any prosecution for perjury or false statement. Do you understand that?

THE DEFENDANT: Yes, ma'am.

* * *

THE COURT: All right. Mr. Follett, you face one charge of Sexual Assault, Third Degree, a felony. You've entered a plea of not guilty to that on a prior date. How do you plead to it today?

THE DEFENDANT: Guilty.

[¶ 24] The district court then asked Mr. Follett to provide a factual basis for his guilty plea.

THE COURT: Before accepting your plea of guilty, I have to find out if you're pleading knowingly and intelligently, and I have to establish a factual basis for your plea. The only way that I can do that is for you to tell me about this matter under oath. [oath administered].

* * *

Mr. Follett, you need to tell me in your own words, what you did on or about mid to late July of 2003 that constitutes the felony crime of Sexual Assault, Third Degree.

THE DEFENDANT: In July of 2003, I did have sex with [the victim]. Oh, and she's under 16 years of age and I'm 65.

THE COURT: I see. And when you say you had sex with her, do you mean that you had sexual intercourse with her?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you knew how old she was at the time?

THE DEFENDANT: Yes.

THE COURT: Did that happen here in Sweetwater County, Wyoming?

THE DEFENDANT: Yes, ma'am.

THE COURT: The State has filed an Affidavit in support of the Information in this case. You've told me on a prior date in November that you had read that Affidavit. Would you say that the allegations in that Affidavit are substantially correct?

THE DEFENDANT: Yes, ma'am.

* * *

THE COURT: The Court finds that the Defendant is mentally alert, capable of understanding these proceedings and competent to enter his plea of guilty to the charge.

His plea has been knowingly and voluntarily made, and not the result of force or threats or promises....

The plea was made after consultation with competent counsel, with whom the Defendant has indicated he is satisfied, without any improper inducement or conditions, and with an understanding of the charge and the direct consequences.

The Defendant was advised as required by Rule 11 and understood those advisements.

There is a factual basis for the plea of guilty, which the Court accepts.

[¶ 25] As referenced by the district court, Mr. Follett was advised of his constitutional rights at his arraignment in November 2003. At the arraignment hearing, Mr. Follett waived a complete reading of the charge; however, the district judge recited a comprehensive summary of the charge and explained the penalties associated with the charge. She specifically noted he had the right to be represented by an attorney at every stage in the proceedings and, even though Mr. Follett was represented by private counsel at that time, she informed him he could request court appointed counsel in

the future if he satisfied the indigency requirements. Mr. Follett was told he would be presumed innocent throughout the proceedings and the State had the burden of proving his guilt beyond a reasonable doubt. The district judge informed him he had the right to: plead not guilty; be tried by a jury; assistance of counsel; confront and cross-examine witnesses; use court processes to obtain the testimony of witnesses; a speedy trial; and appeal all errors. The judge explained in detail his right against self-incrimination. Following her recitation of his constitutional rights, the judge specifically asked Mr. Follett if understood his rights and he responded affirmatively. The judge then carefully informed him of the consequences of a guilty plea, and Mr. Follett again expressed his understanding.

[¶ 26] Contrary to Mr. Follett's assertion, the district court clearly complied with the requirements of Rule 11 by providing the appropriate advisements, both at his arraignment and his change of plea hearing. Mr. Follett's contention that he should be allowed to withdraw his guilty plea because it was not voluntary and knowing is, therefore, unfounded. The district court did not abuse its discretion when it denied his motion to withdraw his guilty plea.

[¶ 27] Affirmed.