2007 WY 27

Cody Lee **FREDERICK**, Appellant (Defendant),

v.

The **STATE** of Wyoming, Appellee (Plaintiff).

No. 05–173.

Supreme Court of Wyoming.

Feb. 15, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Marion Yoder, Senior Assistant Public Defender. Argument by Ms. Yoder.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Daniel M. Fetsco, Assistant Attorney General. Argument by Mr. Fetsco.

Before VOIGT, C.J., and GOLDEN, HILL, and KITE, JJ., and PARK, D.J.

PARK, District Judge.

[¶ 1] Appellant, Cody Lee Frederick (hereinafter "Frederick"), was originally charged with one count of first-degree sexual assault. Frederick and the State agreed that he would plead guilty to a lesser charge of third-degree sexual assault and the State would recommend probation and possible deferral of the conviction. The district court rejected the agreement and entered a sentence of two to four years. In this appeal, Frederick challenges the district court's rejection of the plea agreement, the order of restitution, and the payment of public defender fees.

[¶ 2] We affirm the sentence and remand for correction of those portions of the judgment and sentence that required payment of restitution and public defender fees.

## ISSUES

[¶ 3] The following issues are presented on appeal:

I. Whether imposition of sentence was proper?

II. Did the trial court err by ordering the defendant to pay restitution?

III. Did the trial court err by entering a written judgment and sentence requiring payment of public defender fees after orally waiving those fees?

## FACTS

[¶ 4] On October 9, 2003, Frederick had been drinking, and after offering to drive the victim home, ended up at her apartment. There was no direct evidence as to the amount of alcohol consumed by Frederick; however, the State accepted defense counsel's representation that it was in excess of twelve beers. Frederick attempted to kiss the victim, who rebuffed him. Later, Frederick forcefully grabbed the victim and attempted to remove her clothing. He eventually succeeded in dragging the victim into her bedroom, where he held her down and sexually assaulted her.

[¶ 5] On June 14, 2004, an Information was filed charging Frederick with first-degree sexual assault, in violation of Wyo. Stat. Ann. § 6–2–302(a)(i) (LexisNexis 2003). On June 28, 2004, Frederick appeared for arraignment in district court and entered a plea of not guilty.

[¶ 6] On December 13, 2004, Frederick appeared for a change of plea. The district court advised Frederick of his rights and made the necessary inquiries required by W.R.Cr.P. 11. Frederick acknowledged that he understood his rights; that this agreement was not binding on the court; and that the plea could not be withdrawn.

[¶ 7] Frederick's counsel informed the court that the parties had reached an agreement. The precise terms of this agreement are unclear. Counsel informed the court that:

> The agreement is that my client submit an Alford plea to the count. And in exchange for that, he would receive a third degree sexual assault disposition, and the sentence would be five to seven years suspended. And furthermore, Your Honor, if the PSI supports a 301 agreement, the state has agreed to agree to that.

The prosecutor added that: "The state would leave the option of 301 open pending the result of the PSR." The confusion about the agreement stems from the fact that under this statute, there is no authority for suspending a sentence.

■ [¶ 8] Frederick's counsel advised that this was to be an *Alford* plea. An *Alford* plea allows an individual accused of a crime to voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Counsel explained to the court that this plea was necessary because Frederick had had so much to drink on the evening in question that he did not remember what had happened. The State then offered the facts previously discussed, and Frederick agreed this was the evidence that the State could present. Because there was a possible disposition under Wyo. Stat. Ann. § 7–13–301 (LexisNexis 2005), which allows for possible dismissal of the charge if the defendant successfully completes probation, the court did not enter the plea. The court then referred Frederick to the Department of Probation and Parole for an interview for the Presentence Investigation Report (PSR).

[¶ 9] On April 18, 2005, Frederick appeared for sentencing. The judge who presided over the change of plea had accepted another judicial appointment, and a different judge imposed the sentence. The parties agreed that under Wyoming statutes, Frederick was eligible for sentencing under § 7–13–301. The victim, who had previously submitted a victim impact statement in the PSR, was present at the hearing but did not speak. Frederick indicated that he accepted responsibility, and he made a brief apology.

[¶ 10] The district court then announced that deferral under § 7–13–301 was inappropriate. The court indicated that it had reviewed the court file with the initial charge and the PSR. The court also rejected probation "because of the severity of the charge" and because the court believed that Frederick was not sincere in his acceptance of responsibility and apology. The court imposed a sentence of not less than two nor more than four years of incarceration.

[¶ 11] On May 2, 2005, Frederick's counsel argued a motion for reconsideration of sentence, reasserting that Frederick was a good candidate for treatment under § 7–13–301 or at least for probation. The district court denied the motion, stating that the

physical evidence of bruising confirmed the victim's version of a nonconsensual, forcible assault; and the court continued to be skeptical of Frederick's acceptance of responsibility. The court also considered the impact of the crime on Frederick's community.

[¶ 12] Frederick asserts that he had a binding plea agreement that was improperly rejected by the district court and that the district court abused its discretion when it ordered restitution and reimbursement of public defender fees.

## STANDARD OF REVIEW

[¶ 13] When a plea of guilty is entered as a result of a plea agreement, any promises made by the State must be fulfilled and whether a prosecutor has violated an alleged agreement is a question that is reviewed *de novo*. *Spencer v. State*, 2005 WY 105, ¶ 12, 118 P.3d 978, 982–983 (Wyo.2005). A plea agreement is a contract between the defendant and the State to which the general principles of contract law are applied. "When determining whether a breach of the plea agreement has occurred we: '(1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered.' " *Ford v. State*, 2003 WY 65, ¶ 11, 69 P.3d 407, 410 (Wyo.2003). The prosecutor "must explicitly stand by" the terms of any agreement; and if the State is unable to carry out the terms, the correct remedy is withdrawal of the plea. *Ford*, ¶ 18, 69 P.3d at 412. The State may not obtain the benefit of the agreement and at the same time avoid its obligations without violating either the principles of fairness or the principles of contract law. *Id.*

[¶ 14] The standard of review of restitution orders is confined to a search for procedural error or a clear abuse of discretion. *Penner v. State*, 2003 WY 143, ¶ 7, 78 P.3d 1045, 1047 (Wyo.2003). The court-ordered restitution should be supported by sufficient evidence to afford a reasonable basis for estimating the loss. *Id.* The restitution can be challenged only for abuse of discretion by the court. *Id.* "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it

means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Monjaras v. State*, 2006 WY 71, ¶ 8, 136 P.3d 162, 164 (Wyo.2006). Under this standard, the inquiry is whether the court's choice is reasonable. A victim impact statement is credible evidence to support an order of restitution. *Penner*, ¶ 7, 78 P.3d at 1047(citation omitted).

[¶ 15] There is a distinction between the standard of review of factual challenges to the amount of restitution ordered and challenges to the authority of the court to make a restitution award. Challenges to the factual basis of an award of restitution can be waived if the defendant enters into a plea agreement and then fails to object at sentencing. *Penner*, ¶ 7, 78 P.3d at 1047. If the defendant does not object to the amount of restitution ordered by the district court, the reviewing court must review for plain error. *Id.* at 1048. If the defendant challenges the authority of the district court to order restitution, then review is under a *de novo* statutory interpretation standard, because a court has only that authority to act which is conferred by the subject statute. *Id.*

## DISCUSSION

### *Improper Sentence*

[¶ 16] Frederick contends that the district court improperly imposed a sentence of a term of years instead of either deferring the sentence under § 7–13–301 or placing him on probation. Frederick argues that the district court did not follow the mandates of W.R.Cr.P. 11(e) because he was not told that the plea could not be withdrawn, and because he was not allowed to withdraw the plea when the recommendation was rejected by the district court. He also argues that the district court committed error by imposing a sentence that was inconsistent with the charge of third-degree sexual assault; that defense counsel was ineffective for failing to object; and, finally, that the State violated the terms of the agreement. Each will be discussed in turn. This Court found that the

record does not substantiate Frederick's contentions.

[¶ 17] Imposition of a sentence in a criminal proceeding based on a plea agreement is governed by W.R.Cr.P. 11(e), which provides:

**Plea agreement procedure.**

(1) In General. The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser related offense, the attorney for the state will do any of the following:

(A) Agree not to prosecute other crimes or move for dismissal of other charges;

(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) Agree that a specific sentence is the appropriate disposition of this case.

The court shall not participate in any such discussions.

(2) Disclosure of Agreement; Decision of Court. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, *in camera,* at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (e)(1)(C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea.

(3) Acceptance of Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) Rejection of Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, *in camera,* that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) Notification to Court. Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

[¶ 18] The nature of the agreement between the State and Frederick must be determined before this Court can resolve the questions of whether proper procedures were followed or whether the State violated the agreement.

[¶ 19] At the change of plea hearing, the district court made specific inquiries of Frederick.

THE COURT: Again, the Court is not bound by any plea agreement. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: The Court would order a presentence investigation report . . .

THE DEFENDANT: Yes, sir.

THE COURT: . . . and depending on that report, make a decision as to an appropriate sentence. Regardless of that sentence, you would not be allowed to withdraw your plea.

THE DEFENDANT: Yes, sir.

Frederick then entered a plea of guilty, and the district court made additional inquiries:

THE COURT: Was the plea that you entered voluntary?

THE DEFENDANT: Yes, sir.

THE COURT: Was it the result of any force or threats?

THE DEFENDANT: No, sir.

THE COURT: Was it the result of any promises?

THE DEFENDANT: No, sir.

[¶ 20] Notwithstanding this exchange, Frederick argues that he and the State had a plea agreement either under W.R.Cr.P. 11(e)(1)(A) or (C). Frederick then argues that because this was an agreement, and not a recommendation, the sentence was improper because he was not given an opportunity to withdraw his plea when it was rejected by the district court.

[¶ 21] The question is whether the court was presented with a recommendation under W.R.Cr.P. 11(e)(1)(B) or a binding agreement under W.R.Cr.P.11(e)(1)(C). The State had agreed only to amend the Information to charge sexual assault in the third degree (Wyo. Stat. Ann. § 6–2–304 (Lexis-Nexis 2005)) instead of sexual assault in the first degree (§ 6–2–302) and to consider sentencing under § 7–13–301. Since no other crimes were alleged and no charges were dismissed, W.R.Cr.P. 11(e)(1)(A) does not apply. An agreement made pursuant to W.R.Cr.P. 11(e)(1)(C) is binding on the court; and if it rejects the agreement, the court must allow the defendant the opportunity to withdraw the plea. A recommendation under W.R.Cr.P. 11(e)(1)(B) is not binding on the court, and the defendant does not have the right to withdraw the plea.

[¶ 22] The court stated unequivocally that this was a nonbinding recommendation and that Frederick would not be allowed to withdraw his plea. This could not have been made any clearer. Frederick stated that he understood. There were no objections or attempts to correct the judge when he stated that the agreement was not binding and could not be withdrawn. In addition, when Frederick presented his motion to reconsider the sentence, he did not claim that the sentence was improper, and he specifically conceded "that we both recognize that this Court does have the ability to impose the sentence that is imposed." Frederick's counsel then went on to explain that perhaps the district court had not recognized that Frederick would be a good candidate for deferral or for probation, arguments that did not seem to be persuasive. There is no question of Frederick's recognition that the district court considered the agreement to be only a nonbinding recommendation. Under these circumstances, we conclude that the parties did not have a binding agreement but, instead, presented the district court with a sentencing recommendation that the court rejected. The district court was not required to inform Frederick that the plea could be withdrawn, or to allow him to withdraw his plea when it rejected the recommendation.

[¶ 23] Frederick also argues that although the charge to which the plea was entered was third-degree sexual assault, the court sentenced him as though the charge was first-degree sexual assault. Frederick argues that the district court improperly engaged in "real-offense" sentencing in which the defendant is punished for his "actual" crime instead of the crime for which the conviction was entered. The more appropriate "offense-of-conviction" sentencing, according to Frederick, occurs when the defendant is sentenced only for those crimes that were actually admitted with the plea. At the sentencing hearing, the court noted that the original charge was "first degree sexual assault." The court said that sentencing under § 7–13–301 was not appropriate; further, the court also rejected probation and imposed a sentence of not less than two nor more than four years in the state penitentiary because of "the severity of the charge," the court's impression as to the insincerity of Frederick's apology, and the impact of the crime on his community.

[¶ 24] In denying Frederick's motion to reconsider, the court expanded on its reasons, stating:

Mr. Frederick, as I started to say, I reviewed the file, I reviewed the presentence report. Before arriving at my decision, I found it particularly significant that the investigating officer found bruises on the victim's arms and legs. That does not comport with your explanation to the probation officer that this was a consensual event.

The reason I am telling you this is because I did not rely on and I'm not relying exclusively on the victim's explanation of the circumstances. The physical evidence of bruises on her arms and legs is something that is obvious, and it is visible. It is not something that is subject to much interpretation. And the officer's opinion, those bruises were consistent with forcible sexual contact.

There are some other things that I considered in arriving at your sentence. As you may recall, I advised you that I didn't believe you in the couple words that you told me about your acceptance of this conviction. The record can't reflect that, but I will describe my recollection today of your appearance when you said that.

You didn't look at me, the way you are now. You looked down at the floor, you mumbled the words. I don't know you, I don't know your personality, I don't know your speech traits, but it was my conclusion that you were not sincere in what you said.

\* \* \* \*

I also considered the impact of my sentence on the community in which you live. We all know Pine Bluffs is a very small community. I suspect that this particular charge and conviction and crime [were] talked about in every public for[u]m in Pine Bluffs.

\* \* \* \*

I reviewed the statute, Wyoming Statute 6–2–304, which defines third degree sexual assault. And I compared that with the statutes which define and describe first and second degree sexual assaults.

I can understand how you were surprised at my sentence because the plea agreement seemed to suggest that this charge would be deferred. And then you end up with a judge who throws you in jail. So I can understand [Counsel's] response, and I can understand your response.

However, it continues to be my belief that this was a serious offense, it was nonconsensual, it was violent. It occurred after you had been drinking. I don't consider that to be an excuse.

[¶ 25] Frederick's contention is that the sentencing judge improperly considered the evidence of bruising as evidence that this was a forcible attack, and that sentence was imposed for first-degree sexual assault instead of third-degree sexual assault. First-degree sexual assault, under § 6–2–302, as originally charged in this case, occurs when:

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement;

\* \* \* \*

Third-degree sexual assault, § 6–2–304, as charged here, occurs when:

(a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:

\* \* \* \*

(iii) The actor subjects a victim to sexual contact under any of the circumstances of W.S. 6–2–302(a)(i) through (iv) or 6–2–303(a)(i) through (vi) without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim.

The difference between the two charges is that third-degree sexual assault does not include the elements of sexual intrusion or serious bodily injury. "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ. Wyo. Stat. Ann. § 6–1–104(a)(x) (LexisNexis 2005).

[¶ 26] The district court indicated that it considered a number of factors, including undisputed evidence of bruising. A court is given broad discretion in sentencing and may consider a wide variety of factors about the defendant and his crimes. *Manes v. State,* 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo.2004). The sentence will not be overturned unless there is a clear abuse of discre-

tion. *Id.* Due process requires that sentence be imposed only on accurate information. *Id.* Frederick does not challenge the accuracy of the evidence, only that it was a factor in sentencing. Victim impact information about other crimes or convictions unrelated to the particular crime for which sentence is about to be imposed is permissible. *Id.* W.R.Cr.P. 32(a) specifically permits information about the defendant's characteristics to be considered by the district court before imposing sentence. *Id.*

[¶ 27] Frederick told both the reporting law enforcement officer and the author of the PSR that the sexual contact was consensual. This was in direct conflict with the evidence of bruising and could indicate a lack of acceptance of full responsibility. The district court had reservations about Frederick's acceptance of responsibility and remorse. The fact that Frederick misrepresented the facts and did not accept that he had engaged in serious criminal conduct with significant trauma to the victim are appropriate factors in determining sentence. *Doherty v. State*, 2006 WY 39, ¶ 35, 131 P.3d 963, 974 (Wyo.2006). (The district court is permitted to consider a defendant's character when exercising its discretion in imposing a sentence.) The district court specifically said that the evidence was useful because it was relevant to Frederick's credibility and to whether he truly accepted responsibility. The bruising was also relevant because it was an indication of the force used, thus an indication of the extent of the criminal conduct involved. The district court's statements indicate that the evidence was properly considered and they fall short of any indication that the court was sentencing Frederick for first-degree sexual assault.

[¶ 28] The district court considered undisputed evidence in reaching its decision. It considered both the PSR and Frederick's statements. Further, neither Frederick nor his counsel objected to or contradicted the evidence of the victim's bruising. The district court properly relied upon the PSR and its own articulated observations to formulate its sentencing decision. As in *Manes*, we are compelled to follow precedent and conclude that Frederick had a fair sentencing hearing. There was no evidence that the initial charge prejudiced Frederick in terms of the sentence imposed. Frederick has not shown any prejudice, and he is not entitled to a new sentencing hearing.

[¶ 29] Frederick also contends that the sentencing procedure violated W.R.Cr.P. 32; that his counsel was ineffective for failing to object at various stages; and that the prosecutor violated the plea agreement between the parties. These can be discussed fairly briefly. First, a review of the change of plea hearing indicates that there was compliance with the applicable rules. Frederick was advised of his rights and the consequences of a plea, and there was confirmation that the plea was voluntary.[1] All requirements of W.R.Cr.P. 32 were meticulously followed. Frederick suggests that at the time of sentencing, the district court should have repeated that the plea was not binding. The rules do not require the defendant, who has been properly advised at the change of plea hearing, to be advised of his rights again at the time of sentencing. "[T]he language of W.R.Cr.P. 11(b) no longer requires the district court to perfunctorily repeat information on rights and consequences which has previously been conveyed during arraignment or during other on the record proceedings in the presence of counsel." *Follett v. State*, 2006 WY 47, ¶ 23, 132 P.3d 1155, 1163 (Wyo.2006).

[¶ 30] The contention that trial counsel was ineffective for failing to object

1. The district court advised Frederick of his right to a jury trial and to have the State prove all charges beyond a reasonable doubt; of the right to an attorney who could be provided by the State; of the right to confront and cross-examine witnesses, and to have his own witnesses in court by service of process; of the right to remain silent; and of the right to an appeal. The district court also advised Frederick that a plea would result in a waiver of a trial and of these rights, that a factual basis would be required under oath, and of the consequences of a plea, including the loss of certain civil rights. The district court specifically advised Frederick of the penalties for the amended charge, ensured that Frederick was not under the influence of any drugs, medication, or alcohol, and that his plea was entered voluntarily and not precipitated by any force, threats, or promises.

can be disposed of in an equally summary manner. "When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance." *Hirsch v. State*, 2006 WY 66, ¶ 15, 135 P.3d 586, 593–594 (Wyo.2006). There is a "strong presumption" that counsel effectively represented the defendant and made appropriate strategic decisions. *Id.* Under the two-prong standard articulated in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984), an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Id.* Frederick fails to present any analysis of the performance of his counsel. We "have consistently held that we will not consider claims unsupported by cogent argument or pertinent authority." *Martinez v. State*, 2006 WY 20, ¶ 31, 128 P.3d 652, 665 (Wyo.2006). The record indicates that Frederick was well represented. He was faced with a charge of first-degree sexual assault, ended up with a conviction of third-degree sexual assault, and a sentence of two to four years. That conviction is not only on the low end of the sentence for third-degree sexual assault, but it is substantially less than the mandatory minimum five-year sentence for first-degree sexual assault. The facts, as conceded by Frederick, are more than sufficient to support the conviction. With this outcome, it is difficult to comprehend how it could be asserted that counsel was ineffective.

[¶ 31] Finally, Frederick contends that the prosecutor violated the agreement between the parties. Frederick does not point to any statement or any action of the prosecutor to support this contention except to state that the prosecutor had an obligation to somehow correct statements made in the PSR; however, Frederick only expresses concern that the PSR author did not believe deferral was appropriate largely due to Frederick's statement to her that the sex was consensual. There is no assertion of any misstatement or other error in the PSR; indeed, Frederick's counsel stated that the report was "basically" correct. As indicated, the agreement between Frederick and the State was that the State would not object to consideration under § 7–13–301. The State fully complied with the terms of this agreement.

[¶ 32] When assessing the reasonableness of a sentence, consideration must be given to the crime, its attendant circumstances and the character of the defendant. *Monjaras*, ¶ 15, 136 P.3d at 165–166. Frederick pled guilty and accepted the State's version of the events of October 9, 2003. The facts presented to the district court and acknowledged by Frederick in the presence of his attorney amounted to a forcible rape of the victim. When it imposes a sentence, the court must consider all relevant facts. *Martinez*, ¶ 31, 128 P.3d at 665, *overruled on other grounds by Vaughn v. State*, 962 P.2d 149 (Wyo.1998). The court must "inform itself about the circumstances surrounding the offense and also the facts relating to the accused." *Id.* The district court properly carried out this mandate. It considered the nature of the crime and Frederick's character, and there was no violation of Frederick's constitutional rights. Third-degree sexual assault, of which Frederick was convicted, provides a maximum prison term of fifteen years. Wyo. Stat. Ann. § 6–2–306(a)(iii) (LexisNexis 2005). The sentence of two to four years which Frederick received is well within this range. It appears to this Court that in imposing the sentence, the district court considered the facts supporting the charge and that it took into account appropriate particular mitigating circumstances, including the letters and statements presented on behalf of Frederick. We will not disturb the sentence imposed by the district court.

### Abuse of Discretion in Ordering Restitution and Public Defender Fees

[¶ 33] Frederick does not believe that the district court properly ordered restitution. The PSR indicated that the victim had medical expenses of two thousand five hundred dollars ($2,500). The prosecutor explained to the district court that the victim was mistakenly billed for the forensic examination ("a

sexual assault kit"). The prosecutor said that steps were being taken to "get that straightened out" and get the bill redirected to the requesting agency. The district court then ordered Frederick to "pay restitution for the expenses incurred by the victim" and that restitution should be directed to the State or to the "agency which assisted her." Frederick made no objection to restitution. The Judgment and Sentence ordered restitution to the victim in the sum of two thousand five hundred dollars ($2,500) "for any items not returned or damage done as a result of this offense"; the judgment did not direct restitution to the agency that ordered the examination.

[¶ 34] Since there was no objection to the restitution, the order can be reversed only if there was no authority for it, or if the order of restitution constitutes plain error. *Merkison v. State*, 996 P.2d 1138, 1141–1142 (Wyo. 2000). Frederick argues that there is insufficient evidence of damages; that there is no proof that the victim actually incurred these expenses; and that the forensic examination was not necessary because sexual intrusion is not an element of third-degree sexual assault.

[¶ 35] The Wyoming legislature has created a clear mandate and procedure for the collection of restitution in criminal cases. *Coleman v. State*, 2005 WY 69, ¶ 12, 115 P.3d 411, 413–414 (Wyo.2005). The applicable statute is Wyo. Stat. Ann § 7–9–102 (LexisNexis 2005).

**Order to pay upon conviction:**

In addition to any other punishment prescribed by law the court shall, upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as determined under W.S. 7–9–103 and 7–9–114 unless the court specifically finds that the defendant has no ability to pay and that no reasonable probability exists that the defendant will have an ability to pay.

[¶ 36] The procedure by which restitution is ordered is set forth in Wyo. Stat. Ann. § 7–9–103 (LexisNexis 2005).

**Determination of amount owed; execution:**

(a) As part of the sentencing process including deferred prosecutions under W.S. 7–13–301, in any misdemeanor or felony case, the prosecuting attorney shall present to the court any claim for restitution submitted by any victim.

(b) In every case in which a claim for restitution is submitted, the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity, and shall include its determination of the pecuniary damage as a special finding in the judgment of conviction or in the order placing the defendant on probation under W.S. 7–13–301. In determining the amount of restitution, the court shall consider and include as a special finding, each victim's reasonably foreseeable actual pecuniary damage that will result in the future as a result of the defendant's criminal activity. A long-term physical health care restitution order shall be entered as provided in W.S. 7–9–113 through 7–9–115.

(c) The court shall order the defendant to pay all or part of the restitution claimed or shall state on the record specific reasons why an order for restitution was not entered. If the court determines that the defendant has no ability to pay and that no reasonable probability exists that the defendant will have an ability to pay in the future, the court shall enter specific findings in the record supporting its determination.

(d) Any order for restitution under this chapter constitutes a judgment by operation of law on the date it is entered. To satisfy the judgment, the clerk, upon request of the victim or the district attorney, may issue execution in the same manner as in a civil action.

(e) The court's determination of the amount of restitution owed under this section is not admissible as evidence in any civil action.

(f) The defendant shall be given credit against his restitution obligation for payments made to the victim by the defen-

dant's insurer for injuries arising out of the same facts or event.

[¶ 37] Wyo. Stat. Ann § 7–9–101 (Lexis-Nexis 2005) defines the pertinent terms:

> (iii) "Pecuniary damage" means all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, including damages for wrongful death. It does not include punitive damages and damages for pain, suffering, mental anguish and loss of consortium.
>
> (iv) "Restitution" means full or partial payment of pecuniary damage to a victim.
>
> (v) "Victim" means a person who has suffered pecuniary damage as a result of a defendant's criminal activities. An insurer which paid any part of a victim's pecuniary damages shall be regarded as the victim only if the insurer has no right of subrogation and the insured has no duty to pay the proceeds of restitution to the insurer.

■ [¶ 38] This Court must address the difference between the oral ruling of the district court and the written Judgment and Sentence. The district court orally ruled that payment should be made to the state or to the agency that assisted the victim. The Judgment and Sentence directed restitution to the victim. When a discrepancy exists between the oral pronouncement and the written order, the oral pronouncement prevails. *Sampsell v. State*, 2001 WY 12, ¶ 5, 17 P.3d 724, 725 (Wyo.2001). The Judgment and Sentence should be corrected to be consistent and order restitution to the appropriate state agency. This is consistent with Wyo. Stat. Ann. § 6–2–309(g) (LexisNexis 2005) which provides that the investigating agency shall be responsible for the costs of any examination.

[¶ 39] Under the two-pronged analysis, this Court must first determine whether there was authority for the order of restitution. Authority to order restitution to be paid to the agency requesting the forensic examination comes from the statutes that require restitution and from § 6–2–309(j), which provides that the victim shall be reimbursed for any costs incurred, and that a "convicted offender of a sexual assault shall be ordered to reimburse any costs incurred

... as a direct result of the sexual assault." Since a victim is any person who suffers pecuniary damage, the agency is a victim for purposes of restitution.

■ [¶ 40] Frederick argues that there is no evidence that the victim had to pay the costs of the forensic examination, so any order was beyond the statutory authority. We have already ruled that restitution is to be paid to the agency, so this argument fails. The victim impact statement and the comments of the prosecutor, to which there were no objections, establish that the hospital billed for these expenses and that they would be paid by the investigating law enforcement agency. We have held that a victim impact statement, such as that incorporated into the PSR in this case, is credible evidence upon which a court may impose a restitution amount. *Penner*, ¶ 7, 78 P.3d at 1047. There is no dispute that costs were incurred in the amount of two thousand five hundred dollars ($2,500). Finally, Frederick contends that since third-degree sexual assault does not have sexual intrusion as an element of the crime, restitution may not be ordered for the examination. The law enforcement officers requested the forensic examination in order to determine whether a crime had been committed and, if so, the nature of the crime. The fact that Frederick eventually entered a plea to a lesser charge does not ameliorate the need for a forensic examination at the start of the investigation. The first prong of the test, that there must be authority for restitution, was established.

■ [¶ 41] "This Court has held that, when a defendant knowingly and voluntarily agrees in a plea agreement to pay restitution, and then fails to object at sentencing to the restitution amount, he waives his right to challenge on appeal the factual basis of the restitution award." *Chippewa v. State*, 2006 WY 11, ¶ 7, 126 P.3d 129, 131 (Wyo.2006). If Frederick had concerns about the amount, he had an obligation to object at the time of sentencing. This would have allowed the district court the opportunity to correct any errors. *Janssen v. State*, 2005 WY 123, ¶ 25, 120 P.3d 1006, 1012 (Wyo. 2005). We have made clear that it is the

defendant's obligation to object to any sentencing information he contends is inaccurate; and that a defendant must challenge the accuracy of the information and has the duty to "deny, dispute, or disprove" it. *Martinez,* ¶ 45, 128 P.3d at 669. Since there was no objection at sentencing, and no contention of plain error presented in the appeal, we could summarily dispose of this issue. We will not consider nonjurisdictional issues unless they have been presented with at least a minimum effort to provide a cogent legal argument. *Bailey v. State,* 12 P.3d 173, 178 (Wyo.2000). The conclusion must be that the failure to object and the lack of any plain error analysis on appeal constitutes a waiver of any claim regarding restitution. We will, however, review the record to determine whether the order of restitution constitutes plain error. A defendant who asserts plain error must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious way, and that a substantial right has been adversely affected and that the defendant was materially prejudiced. *Nixon v. State,* 4 P.3d 864, 871 (Wyo.2000). Frederick does not articulate, and this Court is unable to find, any violation of an unequivocal rule of law.

[¶ 42] Frederick finally challenges the payment of public defender fees as set out in the written order. The oral pronouncement at sentencing was that Frederick was unable to pay. The State concedes that the Judgment and Sentence must be amended to conform to the oral ruling.

[¶ 43] The sentence imposed by the district court is affirmed. The matter is remanded for the purpose of correcting the Judgment and Sentence so that it conforms to the oral ruling of the district court concerning payment of restitution and public defender fees.

GOLDEN, Justice, dissenting.

[¶ 44] I respectfully dissent. After reading the transcript of the change of plea hearing, I believe that the parties agreed on a specific sentence as part of the plea bargain. When presenting the plea agreement to the district court, defense counsel stated that, as part of the agreement, Frederick "would re-

ceive a third degree sexual assault disposition, and the sentence ***would*** be five to seven years suspended. And furthermore, Your Honor, if the PSI supports a 301 agreement, the state has ***agreed*** to agree to that." (Emphasis added.) The State acknowledged that the statement presented by defense counsel corresponded with its understanding of the plea agreement.

[¶ 45] While it would have been helpful to this Court for the parties to have put the plea agreement in writing, I believe the above-quoted language is sufficient to indicate that this was an agreed sentence as contemplated by W.R.Cr.P. 11(e)(1)(C). In such case, Frederick retained the right to withdraw his plea in the event the district court rejected the terms of the plea agreement. The district court, however, apparently misunderstood the nature of the plea agreement and instead, in accordance with W.R.Cr.P. 11(e)(2), advised Frederick that he "would not be allowed to withdraw [his] plea." Neither the prosecutor nor defense counsel corrected the district court.

[¶ 46] At sentencing, the district court rejected the sentencing terms of the plea agreement and sentenced Frederick to imprisonment for a term of two to four years. Neither the prosecutor nor defense counsel objected to the sentence on the basis that it ran contrary to the plea agreement. On appeal, Frederick argues that the lack of objection at both the change of plea hearing and the sentencing hearing equates to both prosecutorial misconduct and ineffective assistance of defense counsel. Frederick also claims that the district court erred in not advising him at sentencing, as required by W.R.Cr.P. 11(e)(4), that he could withdraw his plea as a consequence of the court's rejection of the agreed upon sentence. Because I believe these claims have merit, I would reverse and remand with directions that Frederick be allowed to withdraw his plea.

[¶ 47] I am compelled to discuss one additional item. The majority opinion discusses the issue of reimbursement for a sexual assault medical examination pursuant to Wyo. Stat. Ann. § 6–2–309(j) (LexisNexis 2005). The majority remands the case for the purpose of correcting the judgment and sentence

to reflect the district court's oral pronouncement that reimbursement for the sexual assault medical examination should be paid to either the state or the agency that assisted the victim. I believe this is in error. The ambiguity of the oral pronouncement as to where payment should be directed reflects the confusion on the issue of reimbursement. The district court did not know precisely who should be reimbursed because there was no evidence that the cost of the examination had been paid, let alone by whom. All the prosecutor was able to say was that the victim had been erroneously billed for the medical examination and that she was attempting to correct the billing mistake. Since no specific loss payee was identified, the district court's decision regarding reimbursement was premature. The district court's order requiring Frederick to reimburse the victim for the cost of the medical examination should simply be reversed.