[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 17, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15432
Non-Argument Calendar

_____

D. C. Docket No. 04-60216-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KELLY RAY JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 17, 2006)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Kelly Ray Jones appeals his 293-month sentence imposed after pleading

guilty to (1) conspiracy to possess material containing a visual depiction of a minor

engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and (2) conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(b), (c), and (k).  Specifically, Jones contends that the district court erred in finding that he was competent to proceed to sentencing and in calculating his base offense level under the advisory sentencing guidelines.  After review, we affirm the competency determination and dismiss the sentencing challenge based on Jones's sentence-appeal waiver.

## I. BACKGROUND

In July 2004, the St. Lucie County Sheriff's Office obtained arrest and search warrants for Jones and his residence following a month-long investigation into child pornography transmissions.  During the investigation, police enlisted the help of a cooperating individual and used his e-mail account to communicate with Jones, who sent an e-mail message containing two sexually explicit images involving minors.  Following Jones's arrest, an examination of Jones's computer revealed at least 10 but fewer than 150 images of child pornography.

While incarcerated in the St. Lucie County Jail, Jones made over seventy telephone calls to his boyfriend, Kenneth Wilk.  During the calls, Jones asked Wilk to delete e-mails, destroy computer disks containing evidence, cancel his cellular telephone service, and intimidate one of the prosecution witnesses to discourage

2

him from testifying.

**A.    Guilty Plea**

On October 21, 2004, Jones pled guilty to the charges of conspiracy to possess child pornography and conspiracy to obstruct justice. In his written plea agreement, Jones agreed that he would be sentenced in conformity with the federal sentencing guidelines; that the court had authority to impose any sentence up to the statutory maximum; and that he waived the right to appeal his sentence with certain exceptions. The sentence-appeal waiver contained only three exceptions: (1) a sentence exceeding the statutory maximum; (2) an upward departure from the guidelines range; and (3) a government appeal of the sentence.[1]

During the change-of-plea hearing in October 2004, the district court explained the sentence-appeal waiver to Jones and specifically questioned whether he understood the waiver and the three exceptions that would release him from it. After Jones indicated that he fully understood the waiver terms and had discussed

_____

[1]Specifically, the sentence-appeal waiver stated, in relevant part:

> [T]he defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, . . . or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guidelines range that the court establishes at sentencing. . . . However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights . . . . By signing this agreement, the defendant acknowledges that he/she has discussed the appeal waiver set forth in this agreement with his/her attorney. . . .

them with his counsel, the district court found a knowing and intelligent waiver of Jones's appellate rights.

Upon further questioning by the district court, Jones indicated that he had been treated for mental illness and narcotic addiction in the prior year and was taking medication for AIDS, depression, and anxiety, which he had taken the previous night. Jones stated that he did not believe that the medications interfered with his ability to think and understand. Jones further confirmed that no mental or physical condition impeded his understanding of the proceedings. Furthermore, Jones said that he had never been found incompetent by a court of law. Jones's counsel also stated that he thought Jones was competent to enter a plea. After confirming that Jones understood the charges against him and was satisfied with his counsel's representation, the district court found Jones "fully competent and capable of entering an informed plea," and accepted his guilty plea.

## B.    Motion to Withdraw Plea

In December 2004, the magistrate judge permitted Jones's original counsel to withdraw and appointed new counsel for Jones. Two months later, Jones filed a motion to withdraw his guilty plea, contending that his original counsel was ineffective and that he was suffering from significant mental impairments when he entered the plea.

4

At the initial evidentiary hearing on this motion, Jones's new counsel requested a court-appointed expert to evaluate Jones's competency and advised the district court that Jones suffered from "absolute breakdowns," during which he was unable to communicate with his counsel. The district court indicated that it had observed Jones's composed demeanor during the plea colloquy and determined that Jones fully comprehended the proceedings. Jones testified that he did not know what he was doing when he pled guilty. His previous counsel, however, testified that Jones willingly entered into the plea and was lucid throughout discussions about the plea.

On the second day of the hearing, Jones moved to withdraw his motion to withdraw the guilty plea. The district court advised Jones of the consequences of withdrawing his motion, particularly that he could not later claim to have been incompetent when he entered the guilty plea. After the district court questioned whether Jones fully understood these consequences, Jones repeatedly indicated his understanding and his desire to discontinue the evidentiary hearing.

In order to ensure that Jones was competent, the district court appointed Dr. Lori Butts, Ph.D., a psychologist, to conduct a competency evaluation of Jones. Based on its observations of Jones at the plea colloquy and his testimony at the evidentiary hearing, the district court then granted Jones's request to withdraw his

5

motion to withdraw the guilty plea, assuming a finding of competence by the mental health expert.

## C.    Competency Evaluation

During her evaluation of Jones, Dr. Butts considered previous medical records, tested memory malingering, and conducted clinical interviews with Jones over two days.  Dr. Butts did not review background material on Jones, such as the transcript of his plea colloquy. Although Dr. Butts noted that Jones was more capable than he presented and "the index of suspicion for malingering is high," she offered a qualified, advisory clinical opinion that Jones was not competent to proceed based on possible impairment of his cognitive abilities.   Dr. Butts recommended more comprehensive testing to determine whether Jones was malingering.

In response, the district court ordered a comprehensive evaluation.  Dr. Jorge Luis, Ph.D., a forensic psychologist, then conducted a month-long psychological evaluation of Jones with a battery of tests, clinical interviews, and reviews of prison records.  Dr. Luis also studied letters written from Jones to Wilk in September 2001 and June 2002 while Jones was in custody on other charges.  In these letters, Jones indicated that he wanted to fake dementia for purposes of trial. In addition, all three objective tests administered to detect malingering indicated

6

that Jones was a malingerer.  Based on his evaluation, Dr. Luis concluded that Jones was competent to proceed.

At the competency hearing, both parties stipulated to the contents of Dr. Butts's and Dr. Luis's reports.  The government also introduced into evidence the September 2001 and June 2002 letters documenting Jones's desire to fake dementia.  Although Jones did not contest these letters or the findings in Dr. Luis's report, Jones contended that Dr. Luis did not evaluate all of Jones's prior psychological reports or make any conclusion on AIDS-related dementia.  The district court found Dr. Luis's evaluation, the plea colloquy, and its own observations of Jones in prior proceedings "much more persuasive than the equivocal report and evaluation of Dr. Butts. . . ."  As a result, the district court determined by a preponderance of the evidence that Jones was competent to proceed to sentencing.

## D.    Sentencing Hearing

At the sentencing hearing, the district court indicated that it had received additional neurological reports conducted under court-ordered testing.  These reports indicated that Jones may have lesions on both hemispheres of his brain and may be suffering from Marfan Syndrome,[2] but the reports concluded that Jones

---

[2]Marfan Syndrome is a hereditary connective tissue disorder.  The government noted that this opinion was based only on Jones's verbal complaint and was not the result of objective testing.

was competent to proceed. Dr. Luis testified that he had administered an objective Booklet Category Test, which indicated a below average score for Jones but no organic brain damage.

The district court next considered the presentence investigation report. The district court first overruled Jones's objection to the use of the cross-reference provision in U.S.S.G. § 2G2.2 and found that Jones's activity amounted to child pornography trafficking. The court then denied (1) an acceptance of responsibility reduction pursuant to U.S.S.G. § 3E1.1 because Jones's conduct after entering the plea was inconsistent with accepting responsibility and (2) a requested downward departure for diminished capacity pursuant to U.S.S.G. § 5K2.13 because such departures were precluded in cases involving sexual contact with children. The district court noted that it had considered the sentencing factors in 18 U.S.C. § 3553(a) in determining Jones's sentence.

After resolving these objections, the district court determined that Jones had an offense level of thirty-four and a criminal history category of V, which resulted in an advisory guidelines range of 235 to 293 months' imprisonment. The district court ultimately sentenced Jones to a term of 173 months' imprisonment on the child pornography charge and a consecutive term of 120 months' imprisonment on the obstruction-of-justice charge, resulting in a total sentence of 293 months'

imprisonment with a lifetime of supervised release. This appeal followed.

## II. DISCUSSION

### A. Competency to Proceed to Sentencing

On appeal, Jones argues that the district court erred in finding him competent to proceed to sentencing.[3] The Due Process Clause of the Fifth Amendment prohibits the government from trying a defendant deemed incompetent. United States v. Rahim, 431 F.3d 753, 759 (11th Cir. 2005), cert. denied, __ U.S. __, 126 S. Ct. 1280 (2006). In order to be considered competent for trial, a defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,'" and he must have a "'rational and factual understanding of the proceedings against him.'" Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1256 (11th Cir. 2002) (citation omitted).

When a district court is faced with conflicting expert reports, it "does not clearly err simply by crediting one opinion over another where other record evidence exists to support the conclusion." Battle v. United States, 419 F.3d 1292, 1299 (11th Cir. 2005) (affirming a district court's finding of competence despite

---

[3]We review a district court's determination of a defendant's competency to stand trial for clear error. United States v. Izquierdo, 448 F.3d 1269, 1276 (11th Cir. 2006). A district court's findings of fact are clearly erroneous "only when we are left with a definite and firm conviction that a mistake has been committed." Id. at 1278 (quotation marks and citation omitted). We review the district court's denial of a defendant's request for additional competency testing for an abuse of discretion. United States v. Nickels, 324 F.3d 1250, 1251 (11th Cir. 2003).

differing expert opinions on the defendant's competence).

Although Dr. Butts provided a qualified advisory opinion that Jones was not competent, it was not clearly erroneous for the district court to favor the more comprehensive report from Dr. Luis, which concluded that Jones was competent to proceed. First, Dr. Luis's month-long evaluation of Jones, featuring a series of clinical interviews and objective psychological tests, was significantly lengthier than Dr. Butts's initial two-day evaluation. See United States v. Izquierdo, 448 F.3d 1269, 1278-79 (11th Cir. 2006) (finding no clear error where the district court favored an expert opinion based on months of evaluation over a conflicting expert evaluation conducted over two days). Second, Dr. Luis considered a broader array of factors and utilized more resources in forming his expert opinion than did Dr. Butts.[4] Finally, Dr. Butts's conclusion was equivocal at best—despite her "qualified" advisory opinion that Jones was incompetent, she noted that "suspicion for malingering is high" and recommended more extensive testing to verify her findings. Dr. Luis conducted the more extensive evaluation and provided the definitive conclusion that Jones was competent.[5] Accordingly, we cannot conclude

---

[4]Although Jones argues that Dr. Luis's report should not be credited because it did not consider Jones's prior psychological reports, he does not explain how these prior reports would have affected Dr. Luis's findings. Furthermore, even if these reports indicated a prior history of mental illness, past mental illness does not mandate a finding of incompetence. See Battle, 419 F.3d at 1299.

[5]The additional neurological report that Jones might have brain lesions does not cast doubt on Dr. Luis's conclusion because this additional opinion also found Jones competent to proceed. No objective medical tests were conducted to support

that the district court committed clear error in crediting Dr. Luis's finding of Jones's competence.

The district court's observations of Jones's conduct in the plea colloquy also support its finding that Jones was competent. The court noted Jones's composed demeanor and rational responses to its inquiries, during which Jones indicated that he fully understood the proceedings and plea agreement. Jones's counsel at the plea colloquy also stated that Jones was lucid during his discussions about the plea agreement, and counsel indicated that he thought Jones was competent. Even if Jones was at times uncommunicative with his counsel, periods of uncooperativeness alone are insufficient to support a finding of incompetence. See Battle, 419 F.3d at 1299 (affirming the district court's finding of competence despite the defendant's antagonistic relationship with his counsel).

Jones's argument that the district court should have requested additional testing is also meritless. A court may order additional psychological testing if it "desires more information than is otherwise available to it as a basis for determining the mental condition of the defendant. . . ." 18 U.S.C. § 3552(c). In this case, Jones underwent an initial competency examination by Dr. Butts, a comprehensive month-long evaluation by Dr. Luis, and further neurological testing

_____

the report of possible lesions. In contrast, Dr. Luis administered an objective Booklet Category Test that indicated no organic brain damage.

11

conducted after the competency hearing. Because the district court had ample information from which to determine Jones's competency and decided that it needed no additional studies, we conclude that it did not abuse its discretion in denying Jones's request for additional testing.

For all these reasons, the district court did not err in finding Jones competent to proceed to sentencing.

## B.     Sentence-Appeal Waiver

Jones also argues that the district court erred in sentencing by (1) improperly applying the cross-reference provision of U.S.S.G. § 2G2.2; (2) refusing to grant him an acceptance of responsibility reduction; (3) denying a downward departure for diminished capacity; and (4) double-counting sentencing factors under 18 U.S.C. § 3553(a). In response, the government submits that Jones's plea agreement contained a valid sentence-appeal waiver and thus his appeal of his sentence must be dismissed.

The validity of a sentence-appeal waiver is a question of law that we review de novo. United States v. Copeland, 381 F.3d 1101, 1104 (11th Cir. 2004). We have consistently held that a sentence-appeal waiver is valid if a defendant enters into it knowingly and voluntarily. United States v. Bascomb, 451 F.3d 1292, 1294 (11th Cir. 2006) (citing cases). In order to establish that the waiver was knowing

12

and voluntary, the government must demonstrate that either "'(1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver.'" United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir.) (citation omitted), cert. denied, 544 U.S. 1041, 125 S. Ct. 2279 (2005).

At the plea colloquy, the district court specifically questioned Jones about the sentence-appeal waiver, explained the limited exceptions in which he could potentially appeal his sentence, and asked for confirmation that he understood the waiver. Jones indicated that he fully understood the waiver and had discussed it with counsel. The district court made an explicit finding that Jones knowingly and intelligently waived his appellate rights. The waiver's plain language also included a confirmation that Jones had discussed the matter with his counsel. Furthermore, based on our conclusion that the district court did not err in its competency determination, Jones cannot argue that he was incompetent to waive his right to appeal. We thus conclude that Jones's sentence-appeal waiver was knowing and voluntary, barring his right to appeal his sentence unless an exception applies.

Jones's sentence appeal does not fall within any of the three exceptions in his plea agreement. First, his sentence does not exceed the statutory maximum term, which is the "longest sentence that the statute which punishes a crime permits

13

a court to impose, regardless of whether the actual sentence must be shortened in a particular case because of the principles involved in the Apprendi/Booker line of decisions." United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir.), cert. denied, __ U.S. __, 126 S. Ct. 416 (2005). Here, Jones received the statutory maximum of 120 months' imprisonment for the obstruction of justice charge and a 173-month sentence for the child pornography charge, below the statutory maximum of 20 years' imprisonment. Second, there was no upward departure from the guidelines range—Jones received a 293-month sentence, the upper limit of the advisory guidelines range for his offense level and criminal history. Finally, the government did not appeal his sentence. Because Jones waived his right to appeal his sentence and his grounds for appeal do not fall under any of the waiver exceptions, we dismiss his challenges to his sentence.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's finding of Jones's competence and dismiss his appeal of his sentence.

**AFFIRMED IN PART, DISMISSED IN PART**.