2010 WY 167

**Chester Darral FLETCHER,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. S–09–0258.**

Supreme Court of Wyoming.

Dec. 21, 2010.

328

Representing Appellant: Diane Lozano, State Public Defender, and Tina N. Kerin, Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Senior Assistant Attorney General. Argument by Ms. Pojman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

HILL, Justice.

[¶ 1] Chester Darral Fletcher pleaded guilty to attempted manslaughter, but challenges the district court's findings of his competence to proceed both to trial and sentencing. Fletcher also disputes the court's denial of his motion to change his plea to "not guilty by reason of mental illness or deficiency." We affirm.

_____

* Chief Justice at time of oral argument.

## ISSUES

[¶ 2] Fletcher raises two issues before this Court:

1. The trial court erred in its decisions that [Fletcher] was competent to proceed to trial and to sentencing.

2. The trial court erred in refusing to allow [Fletcher] to change his plea to "not guilty by reason of mental illness or deficiency."

## FACTS

[¶ 3] Sometime in the 1990's, Chester Fletcher and Clay Coleman moved from Virginia to Sheridan and rented an apartment together. After their relationship deteriorated in 1998, Coleman obtained a civil judgment against Fletcher. As a result, Fletcher's car and motorcycle were seized. In both 2004 and 2006, Fletcher stole and wrecked Coleman's car.

[¶ 4] On July 9, 2007, Fletcher fired shots at Coleman in the Cody Wal–Mart parking lot and fled the scene. No one was injured in the shooting. Fletcher was later apprehended at his home in Cody and charged with one count of attempted first-degree murder, in violation of Wyo. Stat. Ann. §§ 6–1–301(a)(i) and 6–2–101(a) (LexisNexis 2009), and one count of reckless endangering, in violation of Wyo. Stat. Ann. § 6–2–504(a) (LexisNexis 2009).

[¶ 5] After being bound over to district court, Fletcher filed a motion to suspend the proceedings pursuant to Wyo. Stat. Ann. § 7–11–303 (LexisNexis 2009) to determine if, as a result of mental illness, he was competent to proceed. Also, the motion "wondered" if, at the time of the crime, he lacked substantial capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law. *Miller v. State,* 755 P.2d 855, 861 (Wyo.1988); see also Wyo. Stat. Ann. § 7–11–304(a) (LexisNexis 2009). His motion was granted. An evaluation conducted by Dr. Cathy Buckwell at the Wyoming State Hospital concluded that Fletcher was not suffering from a mental

illness, and that he did not meet the statutory requirements for establishing the defense of not guilty by reason of mental illness. See § 7–11–304.

[¶ 6] Fletcher pleaded not guilty to all charges via video arraignment on November 6, 2007. His jury trial was set for April 28, 2008; however, less than a month before trial, he filed a motion for a competency hearing on the grounds that his own psychiatrist, Dr. Trent Holmberg, had found him not competent to proceed. The competency hearing was set twice, and continued twice, at the request of Fletcher. Fletcher also waived his speedy trial rights. The competency hearing was set for a third time in May of 2008. Prior to that hearing, Fletcher was re-evaluated by Dr. Buckwell on May 20–21, 2008, at the Wyoming State Hospital. Although Dr. Buckwell concluded that Fletcher had paranoid personality disorder, she continued to diagnose him as competent. Both Drs. Buckwell and Holmberg testified at length during Fletcher's competency hearing on June 10, 2008, after which the court found him competent to proceed to trial.

[¶ 7] Two weeks prior to trial, Fletcher filed a late motion to add to his plea of not guilty a plea of not guilty by reason of mental illness, pursuant to W.R.Cr.P. 11(a)(1)(B) and 12.2(a), and Wyo. Stat. Ann. § 7–11–304(c) (LexisNexis 2009), which allow a defendant to do so after arraignment for good cause. The State objected to Fletcher's motion, and the district court ultimately denied the motion.

[¶ 8] On September 19, 2008, pursuant to a plea agreement, Fletcher pleaded guilty to one count of attempted manslaughter, in violation of Wyo. Stat. Ann. §§ 6–2–105(a)(i) and 6–1–301(a)(i) (LexisNexis 2009).

[¶ 9] Fletcher's sentencing hearing was scheduled for January 16, 2009, but he filed a motion to continue the hearing and suspend proceedings, arguing that the medical records he received from Park County Detention Center indicated his deteriorating mental health, making him unfit to proceed with sentencing. The court heard testimony from a doctor of nursing practice from the detention center and granted Fletcher's motion to continue. The court also ordered the parties to agree upon a designated examiner.

[¶ 10] The parties could not agree on the examiner, so the court ordered Fletcher to be examined by the Wyoming State Hospital. Dr. Ronna Dillinger, a psychology intern at the Wyoming State Hospital, found Fletcher competent to be sentenced.

[¶ 11] On April 13, 2009, Fletcher filed a motion requesting permission to be examined by an examiner of his choice. The State filed an objection and after a hearing, the court denied the motion, finding Fletcher competent to be sentenced. On August 24, 2009, Fletcher was sentenced to not less than 18 years nor more than 20 years in the Wyoming State Penitentiary. This appeal followed.

## STANDARD OF REVIEW

 [¶ 12] In *Follett v. State*, 2006 WY 47, ¶ 10, 132 P.3d 1155, 1159 (Wyo.2006), we stated:

> In *deShazer* [*v. State*], 2003 WY 98, ¶ 12, 74 P.3d at 1244–45, we adopted the standards articulated by the United States Court of Appeals for the Tenth Circuit to review competency issues.
>
> > Although competence is a factual issue, that term . . . is not self-defining. Because competency to stand trial is an aspect of substantive due process, . . . the legal standard by which competency is to be evaluated is constitutionally mandated. Accordingly, the components of that standard, required as they are by the Constitution, do not vary according to the views of a particular court. The Constitution can require but one gauge against which to determine whether, because of his mental condition, a defendant's due process rights are violated by requiring him to stand trial. The content of the standard of competency is therefore a question of law which we review de novo.

*Id.* (citations omitted). We look to the following standard in evaluating the sufficiency of the processes used by the trial court in determining whether a defendant

is competent to continue with legal proceedings:

> Once the trial court has "evaluated a defendant's competency by the correct standard, the second inquiry on review is whether the trial court's determination of a defendant's competency is fairly supported by the record of the proceeding at which the determination [is] made.... In other words, the substantial evidence standard of review governs the second inquiry." [*State v.*] *Soares*, 81 Hawai'i 332, 916 P.2d [1233], 1251 [ (Haw.Ct.App.1996) ].

*deShazer*, 2003 WY 98, ¶ 13, 74 P.3d at 1244–45.

## DISCUSSION

■■■ [¶ 13] In his first issue, Fletcher argues that the district court erred when it found him competent to proceed to trial and sentencing, and that his mental state warranted a different result.

A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so "competently and intelligently." *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), quoting *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The same standard of competency applies whether a defendant goes to trial or pleads guilty. *Godinez*, 509 U.S. at 398, 113 S.Ct. 2680. The United States Supreme Court has ruled that a defendant is competent, under the standards of due process, if he has " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.' " *Godinez*, 509 U.S. at 396, 113 S.Ct. 2680, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). The determination of whether a defendant is mentally fit to proceed must be made by the trial court. *Hayes v. State*, 599 P.2d 558, 563 (Wyo.1979). "It is not in the nature of a defense to the charge. It is a threshold issue, necessary to be resolved to prevent a violation of due process through conviction of a person incompetent to stand trial." Id. Moreover, the competency requirement continues from the time of arraignment through sentencing. *See Godinez*, 509 U.S. at 403, 113 S.Ct. 2680 (Kennedy, J., concurring); *deShazer v. State*, 2003 WY 98, ¶ 20, 74 P.3d 1240, 1248 (Wyo.2003).

Wyo. Stat. Ann. § 7–11–301 *et. seq.* sets forth the requirements for determining whether a criminal defendant is competent to stand trial. The statutes are designed to protect criminal defendants' due process rights. *deShazer*, 2003 WY 98, ¶ 26, 74 P.3d at 1251. Under the principles articulated in *Godinez* and the clear language of the statutes, the statutory requirements pertain to all trial court proceedings, including change of plea proceedings.

*Follett*, ¶¶ 8–9, 132 P.3d at 1158.

[¶ 14] Wyo. Stat. Ann. § 7–11–303 (LexisNexis 2009) provides, in pertinent part:

**§ 7–11–303. Examination of accused to determine fitness to proceed; reports; commitment; defenses and objections.**

(a) If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion, that there is reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed, all further proceedings shall be suspended.

(b) The court shall order an examination of the accused by a designated examiner. The order may include, but is not limited to, an examination of the accused at the Wyoming state hospital on an inpatient or outpatient basis, at a local mental health center on an inpatient or outpatient basis, or at his place of detention.

(c) Written reports of the examination shall be filed with the clerk of court. The report shall include:

(i) Detailed findings;

(ii) An opinion as to whether the accused has a mental illness or deficiency, and its probable duration;

(iii) An opinion as to whether the accused, as a result of mental illness or deficiency, lacks capacity to comprehend his position, to understand the nature

and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed;

(iv) Repealed by Laws 2009, ch. 31, § 2.

(v) A recommendation as to whether the accused should be held in a designated facility for treatment pending determination by the court of the issue of mental fitness to proceed; and

(vi) A recommendation as to whether the accused, if found by the court to be mentally fit to proceed, should be detained in a designated facility pending further proceedings.

[¶ 15] Pursuant to the district court's July 2007 order, Dr. Cathy Buckwell, of the Wyoming State Hospital, interviewed Fletcher for two hours in order to assess the issue of his competency. Her "summary of findings" reads as follows:

[Fletcher] appears to have a poor educational background and impoverished social upbringing. He stated several times that he did "what his daddy raised him to do." He appears to have a very concrete way of viewing right and wrong. He rationalized that if an individual is stealing from you and the law cannot do anything about it, then one must protect oneself in any way possible. His reasoning is that of a vigilante who "takes the law into their own hands." This is a weak argument in the eyes of the law, but it is not necessarily due to mental illness or deficiency. It is unlikely that if Fletcher has a mental illness, such as a paranoid personality disorder that he would not have come to the attention of the community, family, or others before this time. It is unusual that he would exhibit such poor judgment and not have a history of similar acts or behaviors that appeared irrational or impulsive. The relationship with [the victim] seems to have been quite emotional to provoke such a violent reaction. Both men are claiming that it is the other who has stolen money and abused them. This suggests there is a more complex relationship than that of friends. This hypothesis may explain

more fully why Fletcher feels victimized by [the victim] and his actions.

### CONCLUSIONS REGARDING COMPETENCY TO PROCEED

It can be stated with a reasonable degree of psychological certainty that Fletcher does have the basic capacity to comprehend his position, understand the nature and object of the proceedings against him, conduct his defense in a rational manner, and the ability to cooperate with his counsel to the end that a defense may be interposed on his behalf.

[¶ 16] Dr. Holmberg's conclusions after interviewing Fletcher on March 1, 2008, were different than Dr. Buckwell's:

*Opinions Regarding Competency to Proceed:* It is my opinion with a reasonable degree of medical probability that [Fletcher] is not competent to proceed. There is significant evidence for a mental illness (Delusional Disorder) as well as a series of mental deficiencies (probable Borderline Intellectual Functioning, possible early dementia and possible history of brain damage resulting in epileptic seizures). His mental deficiencies and mental illness in my opinion significantly reduce his ability to appreciate the legal position in which he presently finds himself. Certainly there are some knowledge gaps with respect to courtroom personnel and procedure, but overall his factual understanding is relatively intact. However a *rational as well as factual* understanding of his position is required. In my opinion, his paranoid delusions render him unable to make a rational appraisal of his situation. This also makes him unlikely to follow the advice of his attorney as he is still convinced he was fully justified to do what he (allegedly) did and if he can get in front of a jury and explain his "side" they will immediately understand and let him go free. Thus, he has an unrealistic view of his chances of succeeding if his case were to go to trial. He also stated that the police do not have any evidence against him. It was not clear if this is a delusional belief or if it reflects ignorance of the facts of the case. Additionally, [Fletcher] has significant trouble communicating. He has both expressive

and receptive language dysfunction. This means that he has significant difficulty understanding spoken language and also has deficits in his ability to express himself such that he can be understood. [Italics in original.]

*Recommendations*

In my opinion, [Fletcher] is potentially restorable to competency with treatment. His mental illness is treatable but has never been treated. His various mental deficiencies are not treatable, although his seizures can be prevented with the continued use of his antiepileptic medications. His communications problems are somewhat treatable. If he is remanded to the State Hospital for treatment, a speech pathologist could be asked to consult and possibly treat any language abnormalities that are identified. A workup with an educational psychologist is advisable, to rule out Mental Retardation.

[¶ 17] During Fletcher's June 2008 competency hearing, both doctors testified at length about the findings in their evaluations, as well as the difference between paranoid personality disorder and delusional disorder. Again, the doctors reached different conclusions: Dr. Buckwell could not find that Fletcher had a mental illness although he appeared to be suffering from paranoid personality disorder.[1] However, she concluded that Fletcher was fit to proceed to trial. On the other hand, Dr. Holmberg testified that Fletcher did suffer from mental illness—specifically, a delusional disorder, and that he was unfit to proceed to trial. Taking both doctors' testimonies into account, the court found Fletcher competent to proceed to trial, as he had the capacity to comprehend his position, and he understood the nature and the object of the proceedings.

[¶ 18] Our job is to determine whether or not there was substantial evidence presented to find Fletcher competent to proceed to trial and whether or not there was substantial evidence to find Fletcher competent to proceed to sentencing. We will address both questions below.

[¶ 19] Fletcher argues that he was delusional and was thus unfit to proceed to trial; however, he does not elaborate as to why his delusions affected his fitness to proceed to trial. In fact, Dr. Buckwell found Fletcher to not only have "awareness and understanding of his charges," but that he even understood the difference between a felony and a misdemeanor, the potential penalties of each, and the serious nature of the charges. "He demonstrated some fear about his chances of acquittal and stated that he is now afraid he would not have a good chance of convincing a jury." Without extensively repeating the doctors' evaluations in bulk, suffice it to say that our extensive review of the record illustrates the doctors' differences of opinion. Dr. Buckwell maintained throughout her evaluations of Fletcher that he was competent, while Dr. Holmberg concluded after his assessment of Fletcher that he was not.

[¶ 20] When a district court is faced with conflicting expert reports, it "does not clearly err simply by crediting one opinion over another where other record evidence exists to support the conclusion." *Battle v. United States,* 419 F.3d 1292, 1299 (11th Cir.2005) (affirming a district court's finding of competence despite differing expert opinions on the defendant's competence). *United States v. Jones,* 200 Fed.Appx. 915, 920 (11th Cir.2006).

[¶ 21] Although Dr. Holmberg provided his qualified opinion that Fletcher was not competent, it was not clearly erroneous for the district court to favor the more comprehensive report from Dr. Buckwell, which concluded that Fletcher was competent to proceed. First, Dr. Buckwell's evaluations of Fletcher, featuring a series of clinical interviews and objective psychological tests occurring on three separate occasions and lasting for six hours each, were notably lengthier than Dr. Holmberg's one-time, three-hour long evaluation that did not include any psychological testing. See *United States v. Izquierdo,* 448 F.3d 1269, 1278–79 (11th Cir.

---

1. Paranoid personality disorder apparently does not rise to the level of a "mental illness" as defined by the Wyoming Statutes. However, it is classified as a mental health disorder by the American Psychiatric Association in the DSM–IV (1994).

**334**

2006) (finding no clear error where the district court favored an expert opinion based on months of evaluation over a conflicting expert evaluation conducted over two days). Second, Dr. Buckwell's findings, in particular areas, were more extensive and considered a broader array of factors and utilized more resources in forming her expert opinion than did Dr. Holmberg's. In fact, much of Dr. Holmberg's diagnosis relied heavily upon a letter from Fletcher's ex-wife. Finally, evidence indicating Fletcher's behaviors may have stemmed to a degree from a paranoid personality disorder which, as conceded by Dr. Holmberg, is not a mental illness under Wyoming law, and that the disorder may have played a role in his rationalizations relating to this case. Dr. Holmberg admitted that the personality defects suffered by Fletcher could explain some of his findings. Dr. Buckwell conducted the more extensive evaluation and provided the definitive conclusion that Fletcher was competent. Accordingly, we cannot conclude that the district court committed clear error in crediting Dr. Buckwell's finding of Fletcher's competence.

[¶ 22] Fletcher's argument that the district court erred in pronouncing him competent to proceed to sentencing is also meritless. Fletcher raised his competency, yet again, on the day of sentencing, after a Park County Detention Center nurse noted Fletcher's mental condition had "deteriorated." The State Hospital was once again assigned to determine Fletcher's competency to proceed to sentencing. Specifically, Dr. Ronna Dillinger, a psychology resident supervised by Dr. Buckwell, interviewed Fletcher for 139 minutes. She also interviewed the Park County Detention Center official, Fletcher's neighbor, and Fletcher's sister. Dr. Dillinger also reviewed Fletcher's forensic evaluations, his presentence investigation report, and a summary of care from Frontier Neurosciences. Dr. Dillinger indicated that Fletcher appeared to have a chronic mental illness, and she determined such did not interfere with his competency to proceed to sentencing.

[¶ 23] On appeal, Fletcher argues that the district court had an obligation to "do more than adopt, without question, the contradictory findings" of Dr. Dillinger. However, Fletcher provides no citation to authority indicating the court was required to further inquire into Fletcher's competency. A court *may* order additional psychological testing if it "desires more information than is otherwise available to it as a basis for determining the mental condition of the defendant." *Jones*, 200 Fed.Appx. at 921. Here, Fletcher underwent an initial competency examination by two doctors, and an additional evaluation by Dr. Dillinger. The district court had abundant information from which to determine Fletcher's competency and to decide to utilize the information on hand rather than order additional studies. We conclude that it did not abuse its discretion in finding Fletcher competent to proceed to sentencing.

*Motion to Amend Plea*

[¶ 24] Fletcher argues that the district court abused its discretion when, approximately two weeks prior to trial, it denied his motion to amend his plea to a plea of not guilty by reason of mental illness.

[¶ 25] W.R.Cr.P. 11(a)(1)(B) and 12.2 read in pertinent part:

**Rule 11. Pleas.**

(a) *Alternatives—*

(1) In General. A defendant may plead not guilty, not guilty by reason of mental illness or deficiency, guilty, or nolo contendere. If a defendant refuses to plead or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

. . . .

(B) Mental Illness or Deficiency. A plea of "not guilty by reason of mental illness or deficiency" may be pleaded orally or in writing by the defendant or the defendant's counsel at the time of the defendant's arraignment or at such later time as the court may for good cause permit. Such a plea does not deprive the defendant of other defenses and may be coupled with a plea of not guilty.

W.R.Cr.P. 12.2—**Rule 12.2. Defense of mental illness or deficiency.**

(a) *Plea*—If a defendant intends to rely upon the defense of mental illness or deficiency at the time of the alleged offense, the defendant shall enter a plea of not guilty by reason of mental illness or deficiency at arraignment. For good cause the court may permit he plea to be entered at a later time. If there is a failure to comply with the requirements at this subdivision evidence of mental illness or deficiency may not be introduced.

[¶ 26] Fletcher also points us to Wyo. Stat. Ann. § 7–11–304 (LexisNexis 2009). That statute reads as follows:

**§ 7–11–304. Responsibility for criminal conduct; plea; examination; commitment; use of statements by defendant.**

(a) A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6–1–202(b).

(b) As used in this section, the terms "mental illness or deficiency" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

(c) Evidence that a person is not responsible for criminal conduct by reason of mental illness or deficiency is not admissible at the trial of the defendant unless a plea of "not guilty by reason of mental illness or deficiency" is made. A plea of "not guilty by reason of mental illness or deficiency" may be pleaded orally or in writing by the defendant or his counsel at the time of his arraignment. The court, for good cause shown, may also allow that plea to be entered at a later time. Such a plea does not deprive the defendant of other defenses.

(d) In all cases where a plea of "not guilty by reason of mental illness or deficiency" is made, the court shall order an examination of the defendant by a designated examiner. The order may include, but is not limited to, an examination of the defendant at the Wyoming state hospital on an inpatient or outpatient basis, at a local mental health center on an inpatient or outpatient basis, or at his place of detention. In selecting the examination site, the court may consider proximity to the court, availability of an examiner and the necessity for security precautions. If the order provides for commitment of the defendant to a designated facility, the commitment shall continue no longer than a forty-five (45) day period for the observation and evaluation of the mental condition of the defendant, which time may be extended by the approval of the court.

(e) If an examination of a defendant's fitness to proceed has been ordered pursuant to W.S. 7–11–303, an examination following a plea of "not guilty by reason of mental illness or deficiency" shall not occur, or be ordered, until the court has found the defendant is competent to proceed under W.S. 7–11–303.

(f) A written report of the examination shall be filed with the clerk of court. The report shall include:

(i) Detailed findings, including, but not limited to, the data and reasoning that link the opinions specified in paragraphs (ii) and (iii) of this subsection;

(ii) An opinion as to whether the defendant has a mental illness or deficiency;

(iii) An opinion as to whether at the time of the alleged criminal conduct the defendant, as a result of mental illness or deficiency, lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

(g) The clerk of court shall deliver copies of the report to the district attorney and to the defendant or his counsel. The report shall not be a public record or open to the public. If an examination provided under subsection (d) of this section was conducted, the report may be received in evidence and no new examination shall be

required unless requested under this subsection. Within five (5) days after receiving a copy of the report, the defendant or the state, upon written request, may obtain an order granting an examination of the defendant by a designated examiner chosen by the requester of the examination.

(h) Except as otherwise provided in this subsection, no statement made by the defendant in the course of any examination or treatment pursuant to this section and no information received by any person in the course thereof is admissible in evidence in any criminal proceeding on any issue other than that of the mental condition of the defendant. If the defendant testifies in his own behalf, any statement made by him in the course of any examination or treatment pursuant to this section may be admitted:

(i) For impeachment purposes; or

(ii) As evidence in a criminal prosecution for perjury.

[¶ 27] Fletcher argues good cause existed for him to change his plea. His defense counsel explained that although at his arraignment a plea of not guilty was entered, good cause existed to change that plea because Fletcher's competency was questionable.

[¶ 28] In an effort to bear out his argument, Fletcher first attempts to distinguish his case from *Wilkening v. State*, 2005 WY 127, ¶ 15, 120 P.3d 680, 684–85 (Wyo.2005). In *Wilkening*, a mental evaluation was done prior to trial where Wilkening was found competent. On the morning of trial, defense counsel requested to change the plea but produced no new psychiatric or psychological evidence. The trial court denied the motion to change the plea and pointed out that the court had concerns about the timing of the request in terms of Wilkening trying to "manipulate the system." Id.

[¶ 29] We do not see Fletcher's suggested demarcation between *Wilkening* and this case. Although experts differed as to the mental status of Fletcher, the court had already credited one doctor's evaluation over the other. Also, the record is clear that Fletcher's not guilty plea was not entered into by mistake, inadvertence, or ignorance.

In fact, defense counsel considered the alternative, which was to add an accompanying plea of not guilty by reason of mental illness. Moreover, during his arraignment, Fletcher acknowledged that he understood his right to plead however he wanted. Defense counsel conceded during the motion to amend plea hearing that a not guilty by reason of mental illness plea had been "considered and evaluated" prior to arraignment. There is no right to a continual succession of competency hearings in the absence of some new factor, and the Wyoming Rules of Criminal Procedure do not place a duty on the trial judge to hold hearing after hearing in the absence of some appearance of change in the defendant's condition since the ruling on competency was originally made. See *Mozee v. Commonwealth*, 769 S.W.2d 757, 759 (Ky. 1989).

[¶ 30] Here, the district court did not abuse its discretion when it denied Fletcher's motion to change his plea, as it did not consider there was good cause to do so.

## CONCLUSION

[¶ 31] We conclude that the district court did not err when it found Fletcher competent to proceed to trial and to sentencing. Furthermore, the district court did not abuse its discretion when it denied Fletcher's motion to add to his plea of not guilty, a plea of not guilty by reason of mental illness. The district court's judgment and sentence are affirmed.